# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY C. THOMAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARK KUO,<br><br>　　　　　Defendant. | Case No. 1:16-cv-00524-DAD-EPG (PC)<br><br>ORDER GRANTING MOTION TO COMPEL AND MOTION TO REOPEN DISCOVERY<br><br>(ECF Nos. 59, 60) |

Plaintiff, Johnny C. Thomas, is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. The case now proceeds on Plaintiff's Second Amended Complaint ("SAC"), filed on March 6, 2017, alleging an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendant Mark Kuo. (ECF Nos. 22, 23.)

Before the Court are Plaintiff's motion for an order compelling discovery (ECF No. 59) and motion to reopen discovery (ECF No. 60). For the reasons discussed below, the Court grants the motions.

**I. Allegations of Plaintiff's Complaint**

Plaintiff alleges that while he was housed at the Kern Valley State Prison, he was sent to the Correctional Treatment Center ("CTC") to have a cyst surgically removed from his lower lip gum area. (ECF No. 22 at 8.) The dental surgeon, Defendant Mark Kuo, completed the surgical

1

removal of the cyst but failed to close the surgical wound after the cyst was removed, and failed to provide Plaintiff with a prescription to medication for post-surgery pain. (*Id.* at 9.) Defendant instead merely stuffed Plaintiff's surgical wound with folded "gall" pads and told the officers who escorted Plaintiff to take Plaintiff back to the CTC holding tank because Defendant was finished with Plaintiff. (*Id.* at 9.)

> While Plaintiff was being escorted back to the holding tank,
>
> he began to complain[] of severe pain in the surgical wound area and was bleeding very badly on the hallway floor. And the pain and bleeding became so bad in the CTC holding tank the e[s]cort officer return[ed] the plaintiff back to the defendant dental surgeon for help. Defendant dental surgeon checked out the surgical wound therein the CTC clinical room and told the plaintiff, "I didn't use stitches to [close] the surgical wound opening, that's why the gall pads there, that is your own bloody spit building up coming out, you should swallow your own excess spit cause the galls cannot catch it all." Then the Defendant although the plaintiff was also suffering from excessive pain as well [] Defendant ordered the Prison e[s]cort officer to take the plaintiff back to his prison without giving him any pain medication to stop the severe pain sufferage, in which the open surgical wound was the cause of. So by the time Plaintiff arrived back at his prison Yard Facility B in front of the Health Clinic the pain and bleeding was so bad he had to be taken straight into the Health Clinic. The nurse said, "Why is there no stitches closing the surgical wound, there should be stitches?" So the Nurse went back over to the CTC to get the Tylenol Three pain medication. . . . [S]he gave the plaintiff his prescribed does. And then said, you gonna have to get some stitches put in that open surgical wound cause germs could get in there and set up a bacterial infection that could be dangerously risky.
>
> The defendant dental oral surgeon not stitching close the surgical wound after removing the cyst has [led] to the plaintiff suffering tremendous pains and bacterial infections. And many continuous healing problem complications.

(ECF No. 22 at 9-10.) Plaintiff alleges that infections resulted from the failure of Defendant to suture shut the incision from the surgery and that, as a result, Plaintiff has suffered pain, teeth sensitivity, nerve damage and infection that is ongoing, constant drooling, the removal of two of Plaintiff's lower front bottom teeth, deformity of his face, shame and embarrassment, and loss of self-esteem and confidence. (*Id.*)

**II. Discovery Sought by Plaintiff**

In his motion to compel (ECF No. 59), Plaintiff seeks the following information, which he requested through discovery requests served on Defendant on April 30, 2018:

1. [A]ll medical records that supports that [Defendant] did in fact following the removal of the cyst on April 8, 2015 from the plaintiff's lower gum area used a nitrate stick to close the wound, as consistent with his education, training and experience.

2. Any and all medical records that supports defendant Mark Kuo's admission that he

       used a nitrate stick to close the wound of the plaintiff's cyst removal surgery on April 8, 2015.

   3. Any and all rules, regulations, policies, that is consistent with Defendant Mark Kuo's education, training and experience that he should have used a nitrate stick on April 8, 2015 upon the conclusion of the surgery to remove the cyst from the plaintiff lower gum area.

   4. Any and all medical records showing any form of dental surgeries performed on the plaintiff by the Health Care Services for Kern Valley State Prison dental department.

(ECF No. 59 at 1-2; ECF No. 60 at 13-14, 16-17.)

In his motion to reopen discovery (ECF No. 60), Plaintiff seeks additional time to obtain the information requested in his motion to compel and his April 30, 2018, discovery requests, as well as the following additional information, which he requested in discovery requests served on Defendant on May 22, 2018:

   1. Complete California Correctional Health Care Services records confirming the material facts that defendant Mark Kuo closed the hole of the post-surgery surgical wound with a Nitrate Stick.

   2. Any and all rules, regulations, and policies, or operation standards policies of the California Correctional Health Care Services which (shows) [what] Defendant must use, whether it be nitrate stick, adhesives, or (Stitches/sutures) to close the hole or surgical wound of the post-surgery cyst removal performed on April 8, 2015.

   3. Any and all complete prison medical records concerning the plaintiff's dental treatment. Referrals to and/or Dental Treatment Orders of the Dental Authorization Review Committee i.e., [DAT], of the Kern Valley State Prison-California Correctional Health Care Services division between December 1, 2014 to December 1, 2016.

   4. Any and all documented actions of the Dental Authorization Review Committee or i.e. [DAR] of the California Correctional Health Care Services concerning all dental related treatments the plaintiff received while residing at the Kern Valley State Prison.

(ECF No. 60 at 20-21.)

**III. Discussion**

The Court's Scheduling Order, issued on November 27, 2017, set a deadline of May 18, 2018, for the completion of all non-expert discovery. (ECF No. 48 at 5.) The Court also set a discovery and status conference for April 9, 2018, and required that any motions to compel be filed at least four weeks before that conference. (*Id.* at 4.) The Court stated: "Motions to compel will not be permitted after the [April 9, 2018 discover and status] conference absent good cause." (*Id.*)

Plaintiff's April 30, 2018, discovery requests were filed less than forty-five days before the May 18, 2018, deadline for non-expert discovery, leaving insufficient time for Defendant to respond prior to the non-expert discovery deadline. Plaintiff's May 22, 2018, discovery requests were filed after the non-expert discovery deadline passed. Further, Plaintiff's motion to compel was filed after the April 9, 2018, deadline for motions to compel. Accordingly, Plaintiff must show good cause both for reopening discovery and for filing the untimely motion to compel. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (District courts will modify dates set forth in a scheduling order only upon a showing of good cause); *Sheridan v. Reinke*, 611 Fed. Appx. 381, 384 (9th Cir. 2015) (applying *Johnson* "good cause" requirement to motions to reopen discovery); *see also Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" (citation omitted)).

The "good cause" standard primarily considers the diligence of the moving party, and a court should modify the scheduling order to reopen discovery only if the deadline could not "reasonably be met despite the diligence of the party seeking" to reopen. *Johnson*, 975 F.2d at 609. In determining whether good cause exists to reopen discovery, courts may consider a variety of factors, such as:

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

*U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997).

As to the first factor, whether trial is imminent, the trial is not scheduled to begin until September 24, 2019, almost a year away.

As to the second and third factors, whether the request is opposed and whether the non-moving party would be prejudiced, Defendant both opposes the request to reopen and asserts that

he will be prejudiced if the Court grants the request. The prejudice asserted by Defendant is that his expert relied on a review of the medical records in reaching his decision and "depending on what new discovery is conducted, a new expert report may have to be drafted." (ECF No. 62 at 3.) Defendant also asserts that reopening discovery will require adjustments in other dates set forth in the scheduling order, including the deadline for motions for summary judgment and the trial date. (*Id.*)

The Court finds that any prejudice to Defendant in reopening discovery can be mitigated. First, as to the expert, as will be discussed below, Defendant was to have already disclosed to Plaintiff all medical records related to this incident. To the extent there are additional medical records that have not been disclosed, any prejudice from such disclosure appears to result from Defendant's failure to earlier comply with the Court's disclosure requirement. Defendant does not claim prejudice would result from disclosure of the other information requested by Plaintiff.

As to the fourth factor and fifth factors, Defendant asserts that Plaintiff was not diligent in pursuing discovery and that the need for discovery on the issue of the nitrate stick was or should have been known to Plaintiff since February 2018, when Plaintiff was served with Defendant's responses to Plaintiff's previous discovery requests. (ECF No. 62 at 3.)

Plaintiff admits that Defendant responded to Plaintiff's previous discovery requests on February 18, 2018. (ECF No. 60 at 1.) However, Plaintiff asserts that he has good cause for his delay in seeking discovery on the nitrate stick issue.

First, Plaintiff asserts that beginning in early January 2018, he began "what could only be described as a Prison Traveling tour intended to transfer the plaintiff to an out-of-state prison facility. . . ." (ECF No. 64 at 2.) He was transferred from Kern Valley State Prison ("KVSP") to Ironwood State Prison ("ISP"), then to Chuckawalla Valley State Prison, then back to ISP, where he "eventually won an Inmate 602 Appeal to not be Transferred to [an] Out-of State prison facility on Medical grounds. . . ." (*Id.*) Plaintiff states that he won the appeal in the middle of February 2018 and was transferred in late March or early April 2018 to the Deuel Vocational Institution ("DVI"), where he remains. (*Id.* at 3.) The copies of Plaintiff's grievances, attached to his motion, support Plaintiff's assertion that he was at ISP as late as March 27, 2018. (ECF No.

64 at 15-25.)

Second, Plaintiff asserts that while he was at Ironwood and Chuckawalla State Prisons, his typewriter and much of his legal property was removed from him due to his out-of-state transfer status. These limitations prevented Plaintiff from effectively engaging in discovery while he was at these prisons, which included the period after Defendant responded to Plaintiff's discovery requests. (*Id.* at 3.) Again, the copies of Plaintiff's grievances, attached to his motion, support Plaintiff's assertion that he did not have access to his legal materials in February or March. (ECF No. 64 at 15-25.)

Third, Plaintiff asserts that he did not receive his legal materials for at least a week after he was transferred to DVI. Given that Plaintiff appears to have been at ISP until at least March 27, 2018, this would mean that he did not receive his legal materials until after the April 3, 2018, date on which he would have needed to file his discovery requests seeking information regarding the nitrate stick. Plaintiff served his April 30, 2018, discovery requests on Defendant just a few weeks after receiving his legal materials.

As to Plaintiff's May 22, 2018, discovery requests, it appears that those requests were triggered by conversations he had with medical personnel during which he contends medical personnel told him that the CDCR Health Care Services does not have nitrate sticks for closing surgical wounds, that nitrate sticks are not allowed for use in closing surgical wounds and only sutures is allowed, and that nitrate sticks would not be used for oral surgery because the mouth is too moist and would not allow the nitrate stick application to properly dry. (*See* ECF No. 60 at 2-3, 7-11.) Plaintiff filed his May 22, 2018, discovery requests just a few days after those conversations.

As to the sixth factor—the likelihood that the discovery will lead to relevant evidence—Defendant argues that Plaintiff has already received all of his dental and medical records. (ECF No. 62 at 3.) Defendant further asserts that even if a nitrate stick was used and it was not part of CDCR practices this is insufficient to prove deliberate indifference. (*Id.*)

The Court agrees with Defendant that Plaintiff should have already received his dental and medical records, as the Court ordered the parties to disclose such records to the opposing party no

later than December 20, 2017, and imposed a continuing obligation to disclose such records within thirty days of obtaining them. (ECF No. 47.) If Defendant has complied with the Court's order and already provided Plaintiff with his medical and dental records, *and* the records Defendant has already provided to Plaintiff fulfill Plaintiff's requests for discovery of various medical records (*see* ECF No. 60 at 13-14, 20-21), the burden of Defendant stating so in response to Plaintiff's discovery requests is minimal. Further, the Court finds, based on the record before it, that the information sought by Plaintiff—medical and other records, rules, regulations, policies, operating standards, etc., related to use of nitrate sticks (*see id.*)—may lead to relevant evidence.

The Court finds that Plaintiff has demonstrated good cause for his delay in seeking discovery regarding the use of a nitrate stick to close the surgical wound resulting from the removal of the cyst. Accordingly, the Court will grant the request to reopen discovery for the limited purpose of requiring Defendant to respond to Plaintiff's discovery requests dated April 30, 2018, and May 22, 2018.

As to Plaintiff's motion to compel, Defendant's opposition relies on the untimeliness of Plaintiff's discovery request and the untimeliness of the motion to compel. The Court has found good cause for Plaintiff's untimely discovery request and untimely motion to compel and will accordingly also grant the motion to compel.

The Court recognizes that its delay in ruling on the pending discovery motions has likely resulted in additional prejudice as the parties have now filed cross-motions for summary judgment. To mitigate any prejudice resulting from this delay, the Court will allow the parties to file supplements to their motions for summary judgment once Defendant has responded to Plaintiff's pending discovery requests.

Based on the foregoing, IT IS ORDERED:

1. Plaintiff's Motion to Reopen discovery (ECF No. 60) and Motion to Compel (ECF No. 59) are GRANTED.
2. Discovery is reopened for the limited purpose of requiring Defendant to respond to Plaintiff's First Request for Production of Documents, dated April 30, 2018 (ECF No. 60 at 13-14, 16-17) and Plaintiff's Second Request for Production of

Documents, dated May 22, 2018 (ECF No. 60 at 20-21).

3. Defendant shall serve his responses to Plaintiff's First Request for Production of Documents, dated April 30, 2018, and Plaintiff's Second Request for Production of Documents, dated May 22, 2018, along with responsive documents, if any, within **thirty (30) days** of the date this order is entered.

4. Defendant is granted leave to file a supplement to its expert report to address any supplemental production of documents within **forty-five (45) days** of the date this order is entered.

5. Both parties may file a supplement to their motions for summary judgment within **sixty (60) days** of the date this order is entered.

6. Both parties shall file their opposition, if any, to the opposing party's motion for summary judgment within **ninety (90) days** of the date this order is entered.

7. Any reply in support of a party's motion for summary judgment shall be filed within **fourteen (14) days** of the date the party is served with the opposing party's opposition.

IT IS SO ORDERED.

Dated: **October 2, 2018**        /s/ *Erin P. Gross*
             UNITED STATES MAGISTRATE JUDGE