UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY C. THOMAS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MARK KUO,<br><br>　　　　　Defendant. | Case No. 1:16-cv-00524-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT BE DENIED; AND THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF NOS. 68, 70, 71)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiff, Johnny C. Thomas, is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action now proceeds on Plaintiff's Second Amended Complaint against Defendant Mark Kuo ("Defendant") on a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF Nos. 22, 23.) Before the Court is Plaintiff's motion for summary judgment and supplemental motion for summary judgment (ECF Nos. 68, 71), and Defendant's cross-motion for summary judgment (ECF No. 70). The Court recommends denying Plaintiff's motion for summary judgment and supplemental motion for summary judgment. The Court also recommends denying Defendant's cross-motion for summary judgment.

## I.  ALLEGATIONS IN SECOND AMENDED COMPLAINT (ECF No. 22)

The events at issue in this case occurred while Plaintiff was incarcerated at Kern Valley State Prison ("KVSP"). This case is proceeding only against Defendant Mark Kuo, who is a Doctor of Dental Medicine and an oral surgeon employed by the California Department of Corrections ("CDCR").

On April 8, 2015, Plaintiff was sent to the Correctional Treatment Center ("CTC") to have a cyst surgically removed from his lower lip gum area. Defendant Mark Kuo conducted the surgery. Defendant completed the surgical removal of the cyst, but did not close the surgical wound with stitches or sutures, nor did Defendant provide Plaintiff with any pain medication. Instead, Defendant merely stuffed the surgical wound with folded gall pads and directed escort officers to take Plaintiff to the CTC medical holding tank. On the way to the holding tank, Plaintiff was in severe pain in the area of the surgical wound and was bleeding from the wound onto the hallway floor. While Plaintiff was in the holding tank, his pain and bleeding became so bad that the officers returned Plaintiff to the CTC clinical room for help. Defendant checked the surgical wound and told Plaintiff, "I didn't use stitches to [close] the surgical wound opening, that's why the gall pads there, that is your own bloody spit building up coming out, you should swallow your own excess spit cause the galls cannot catch it all!" Defendant did not act to stop the bleeding, close the wound, or address the excessive pain that Plaintiff was suffering. Instead, Defendant ordered the escort officers to take Plaintiff back to his yard without any additional treatment.

The escort officers took Plaintiff back to his yard as instructed. By the time they arrived at the yard, Plaintiff's pain and bleeding was so bad that he was taken straight to the health clinic. The nurse said, "Why is there no stitches closing the surgical wound, there should be stitches?" The nurse went back over to the CTC to get Tylenol Three pain medication and gave Plaintiff a prescribed dose. The nurse then told Plaintiff, "you gonna have to get some stitches put in that open surgical wound because germs could get in there and set up a bacterial infection that could be dangerously risky." Several days later, a different surgeon used sutures to close the surgical wound left open by Defendant.

The failure of Defendant to stitch close the surgical wound after removing the cyst led to Plaintiff "suffering tremendous pains and bacterial infections. And many continuous healing problem complications," requiring follow-up surgeries. Plaintiff has also suffered resulting nerve damage, the inability to eat well, teeth sensitivity to hot and cold food temperatures, ongoing gum aching, and the eventual loss of two lower front bottom teeth, which has caused Plaintiff shame, embarrassment, loss of self-esteem, and loss of confidence. Plaintiff requests monetary damages and injunctive relief.

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A.    <u>Summary Judgment Standard</u>

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.*" Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), quoting Fed. R. Civ. P. 56(c). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the court must determine "whether a fair-minded jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

3

which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n.2. But, "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

Additionally, the Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## B.   Undisputed Material Facts[1]

The Court has compiled the following undisputed facts from the Parties' separate statements of undisputed facts as well as various filings and evidence submitted by the parties. These facts are deemed undisputed for the sole purpose of addressing the cross-motions for summary judgement. The undisputed facts are as follows:

---

[1] Defendant requests the Court disregard Plaintiff's statement of material facts as untimely and find, as a result, that there are no disputed issues of material fact. (ECF No. 89 at 2-3.) The Court declines to do so. *See Thomas*, 611 F.3d at 1150 (*pro se* prisoners are expressly exempted from the requirement of strict compliance with the summary judgment rules).

4

1. Defendant is a Doctor of Dental Medicine and is licensed in the State of California. (ECF No. 79 at 1; ECF No. 83 at 2.)

2. Plaintiff was diagnosed with having a cyst in his mouth that needed to be removed. (ECF No. 79 at 1; ECF No. 83 at 1.)

3. Plaintiff was referred to Defendant for removal of the cyst. (ECF No. 79 at 1; ECF No. 83 at 1.)

4. On April 8, 2015, Defendant surgically removed the cyst, which was located on Plaintiff's lower lip gum area. (ECF No. 79 at 2; ECF No. 22 at 8.)

5. Defendant did not use stitches or sutures to close the surgical wound after removing a cyst from Plaintiff's mouth. (ECF No. 22 at 8-9; ECF No. 71 at 45; ECF No. 78 at 3.)

C.    **Summary of Parties' Arguments and Evidence Submitted**

1.    ***Summary of Plaintiff's Arguments (ECF Nos. 68, 71, 73, 74, 75, 76, 77, 83, 85, 86, 87, 90)***

Plaintiff argues that he is entitled to summary judgment on his claim against Defendant for deliberate indifference to Plaintiff's serious medical needs because (1) his administrative appeal was granted in part, and (2) Defendant admits that he did not use stitches/sutures to close the surgical wound.

As to the administrative appeal, Plaintiff argues the "material facts of this lawsuit [were] admitted to and responsibility was accepted when the Plaintiff sought administrative remedy by way of his Inmate/Patient 602 California Health Care Services Appeal." Plaintiff argues that the California Health Care Services Appeal department "investigated Plaintiff's Inmate/Patient 602 Health Care Services Appeal," and accepted responsibility by "'Granting in Part' Plaintiff's claim allegations."

As to Defendant's admission that he did not use stitches or sutures to close the surgical wound, Plaintiff points out that Defendant performed the cyst removal surgery, and argues that Defendant admits "that he didn't close the cyst removal surgical wound hole with stitches/sutures" after he completed the surgery. This left Plaintiff's "front lower lip gum area completely without stitches/sutures," which in turn "allowed food, germs and infectional

5

bacteria to get into the dental wound hole of the surgery," causing pain and healing complications.

Plaintiff argues that Defendant's admission that he did not stitch/suture close the wound, combined with the result of Plaintiff's Inmate/Patient 602 Health Care Services Appeal, demonstrates that there is no material issue of fact and that he is entitled to summary judgment.

In opposition to Defendant's arguments, summarized below, Plaintiff argues that there is a dispute of fact regarding whether Defendant used a silver nitrate stick to close Plaintiff's surgical wound. Plaintiff contends that Defendant did not; Defendant contends that he did. Plaintiff stresses that he is not challenging Defendant's use of a silver nitrate stick as opposed to stitches/sutures to close the wound. His contention is, instead, that Defendant did not use anything—did not use stitches/sutures and did not use a silver nitrate stick or anything else—to close the wound and that this failure to close the wound was deliberately indifferent to Plaintiff's serious medical needs.

### 2. *Summary of Plaintiff's Evidence*

In support of his arguments, Plaintiff relies on his own declarations, the declaration of Hiram Summers, records from Plaintiff's administrative appeal, Plaintiff's dental and medical records, and Defendant's responses to Plaintiff's requests for admissions. In addition, Plaintiff's Second Amended Complaint ("SAC"), motion for summary judgment, and some of the other documents Plaintiff filed in support of summary judgment and in oppositions to Defendant's motion for summary judgment, have been sworn to under penalty of perjury. These sworn documents will be treated as affidavits for purposes of summary judgment where they are based on facts within Plaintiff's personal knowledge and are admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56."); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) ("A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify.").

///

6

a.    Plaintiff's Declarations

Plaintiff has submitted five separate declarations: (i) an undated declaration; (ii) a May 17, 2018, declaration; (iii) a May 23, 2018, declaration; (iv) a September 10, 2018, declaration; and (v) a November 13, 2018, declaration.

i.    *Undated Declaration*

In an undated declaration, Plaintiff declares that after the surgery, Defendant "did not stitch/suture close the wound of plaintiff's cyst removal surgery after the completion of mouth surgery." (ECF No. 71 at 41.)

ii.    *May 17, 2018, Declaration*

In his declaration dated May 17, 2018, Plaintiff declares:

On the 17th day of May, 2018, while waiting to go to medical appointment at the Deuel Vocational Institution medical department, I was told by Dental Assistant Cynthia Nolan, "That California Health Care Services of CDCR. . . does not have nitrate sticks for closing surgical wounds cause nitrate sticks are not allowed for such purpose. That the dental department use only sutures or silk thread stitches for closing up surgical wounds when a cyst is removed from my lower lip area, and not nitrate sticks."

(ECF No. 73 at 22.)

iii.    *May 23, 2018, Declaration*

In his declaration dated May 23, 2018, Plaintiff declares:

On the 23 day of May, 2018, I was attending my medical appointment at the Deuel Vocational Institution medical clinic to see the doctor. I first came to see Medical assistant Nurse Ms. T. Banks who told me, "The reason Nitrate Stick is not used in matters such as a cyst removal surgery is the surface need to be dry to stick the Nitrate Stick onto the wound opening to seal it close. You wouldn't use it in someone mouth after surgery to close a cyst from the gum area because the mouth stays moist and won't allow nitrate stick to dry properly."

(ECF No. 73 at 24.)

iv.    *September 10, 2018, Declaration*

In his declaration dated September 10, 2018, Plaintiff declares:

Defendant Mark Kuo did not close the surgical wound hole by stitching, suturing, or any other means. And even after escort officers as lay person brought the plaintiff back before Defendant Mark Kuo for help because of all the blood draining from the wound and pain the plaintiff was suffering. Defendant Mark

7

Kuo still yet in deliberate indifference to plaintiff's serious dental needs refused to close surgical wound with stitches, sutures, or any other means. On the same day 4-8-15, dental assistant nurse for the prison A-Yard told plaintiff, "Defendant should have placed stitches/sutures in the wound to close it after cyst removal surgery done." Follow-up appointment dentists said, "That the cyst removal wound needed stitches," and did stitch the wound closed [himself], saying, "Defendant should have stitched it."

(ECF No. 68 at 9.)

### v. November 13, 2018, Declaration

In his declaration dated November 13, 2018, Plaintiff declares:

At the time of the cyst removal operation the Plaintiff was fully conscious during the whole procedure.

Plaintiff states that Defendant Mark Kuo did not stitch/suture close the surgical wound incision, nor did Defendant Mark Kuo use silver nitrate stick to cauterize the wound at any time during the course of the whole cyst removal procedure operation performed by Defendant. Therefore the Plaintiff disputes Dr. Mark Kuo's false claim of using silver nitrate stick as untrue.

The Plaintiff has evidence of the medical record showing no entry that Dr. Mark Kuo used silver nitrate stick during the cyst removal surgical procedure done on 04-08-2015 at Central Treatment Center on the Kern Valley State Prison.

(ECF No. 80 at 16-17.)

### b. Declaration of Hiram Summers

Plaintiff has also submitted the declaration of Hiram Summers dated May 17, 2018. At the time of the declaration, Mr. Summers was an inmate at the Deuel Vocational Institute in Trace, California. (ECF No. 73 at 20.) He states that while he was at the clinic,

I observed Johnny G. Thomas come up to talk [to] Dental Assistant Cynthia Nolan and ask her, is "a dental surg[eon] suppose[d] to use Nitrate Stick to close the surgical hole opening when he removed a cyst from the gum of my lower lip area?" I heard Dental Assistant Cynthia Nolan answer him saying, "We do not use Nitrate Sticks to close surgical operation wounds here in California Health Care of CDCR. . . . We don't even have Nitrate Sticks here in the medical department to use for closing up surgical wound completion cause nitrate sticks are not allowed here in CDCR Health Care Services. We only use sutures and silk thread to close up your cyst removal surgeries cause Nitrate Sticks are not even in CDCR medical dental at all."

(*Id.*)

///

///

Plaintiff has provided numerous documents from his administrative appeal. In his appeal, Plaintiff requested review as follows: "I was left with a large open hole at the base of my lower lip exposing painful nerves and raw flesh inside to food and germs. Due to CRC Dental Surgeon not stitching the lip close after." (ECF No. 71 at 9.) Plaintiff sought relief of dental corrective treatment from an outside dental specialist and monetary damages in the amount of $500,000. (*Id.*) The first level appeal response partially granted Plaintiff's request for specialty service, but deemed monetary compensation to be beyond the scope of the appeals process. (*Id.* at 34.)

The second level appeal response partially granted Plaintiff's appeal, noting that Plaintiff was seen for specialty dental treatment by an oral surgeon on May 21, 2015, and that Plaintiff will continue receive dental treatment as resources allow. (*Id.* at 37.) The second level appeal response also noted that monetary compensation is beyond the scope of the appeals process. (*Id.*)

The director's level response denied Plaintiff's appeal. (*Id.* at 38-39.) The director's level response states:

> Your dental record indicates the treatment you received to date was appropriate for the dental problems diagnosed. Be advised that post surgical complications during the healing phase can occur with any treatment performed. The follow up care that was provided was timely, appropriate and within the standard of care. You are currently receiving care to save several of your teeth with root canal therapy; therefore, there is no medical indication to be seen by an outside dental specialist at this time. Monetary compensation is beyond the scope of the appeals process.
>
> After review, no intervention at the Director's Level of Review is necessary as your dental condition has been evaluated and you are receiving treatment deemed necessary.

(*Id.*)

d.    Dental Records

Plaintiff's dental records include progress notes and other records from both before and after the cyst removal surgery. (*See* ECF No. 71 at 51-89.) The progress notes from the day of surgery, April 8, 2015, are largely illegible, but do not appear to include any reference to the

use of a silver nitrate stick. (*Id.* at 64.)

In progress notes dated April 13, 2015, Dr K. Mei, DDS, indicated that there were not sutures or stitches observed, that Plaintiff was in severe pain, and that there was inflammation and swelling. (*Id.* at 67.) In progress notes dated April 17, 2015, Dr. J. Napoles, DDS, noted that Plaintiff was still in pain, and that the post-operation ("PO") wound was still open. "Not sure if oral surgeon sutured wound, unable to read his writing, not sure if intentional or unintentional. Delayed wound healing." (*Id.* at 68.) In progress notes dated April 23, 2015, Dr. Napoles notes that Plaintiff was still in pain, "PO wound still open 2 cm," "Delayed wound healing," and that Dr. Napoles stitched close the wound using sutures. (*Id.* at 71.) In progress notes dated April 30, 2015, Dr. Napoles indicates that the wound was healing better, that there was no swelling/inflammation, and that Plaintiff wanted to have the stitches left in for a few more days. (*Id.* at 75.)

### e. Defendant's Responses to Plaintiff's Requests for Admissions

In requests for admission, Plaintiff asked Defendant to admit that Defendant was supposed to close the open wound left by the cyst removal surgery "by the use of some form of nitrate stick, adhesives, or stitches/sutures." (ECF No. 71 at 45.) Defendant responded to this and other requests for admission regarding the failure to close the wound, stating: "Following removal of the cyst on April 8, 2015, Defendant used a nitrate stick to close the wound, as is consistent with his education, training, and experience." (*Id.*)

### f. Plaintiff's Sworn Second Amended Complaint

Plaintiff's Second Amended Complaint ("SAC"), which is sworn under penalty of perjury, states that after the surgery, Defendant did not stitch close the wound but instead,

> simply stuffed the plaintiff's surgical wound opening with folded gall pads and told the escort officers to take the plaintiff back because he's through. While the plaintiff was being escorted back to the CTC medical holding tank, he began to complain of severe pain in the surgical wound area and was bleeding very badly on the hallway floor. And the pain and bleeding became so bad in the CTC medical holding tank the escort officer returned the plaintiff back to the defendant dental surgeon for help. Defendant dental surgeon checked out the surgical wound there in the CTC clinical room and told the plaintiff, "I didn't use stitches to [close] the surgical wound opening, that's why the gall pads there, that is your own bloody spit building up coming out, you should swallow your own excess spit cause the galls can not catch it all!

(ECF No. 22 at 8-9.)

### 3. Summary of Defendant's Arguments (ECF Nos. 69, 70, 78, 79, 81, 89)

Defendant argues that the undisputed material facts demonstrate that after he removed the cyst from Plaintiff's gum, Defendant used a nitrate stick to cauterize the surgical wound in lieu of stitches, and that the use of the nitrate stick was not deliberately indifferent to Plaintiff's medical needs but was, instead, an exercise of professional judgment and within the standard of care. "Plaintiff cannot show that Dr. Kuo's one-time decision to cauterize the opening left after the cyst removal rather than suture it rises to the level of a purposeful failure to respond to his medical needs." (ECF No. 70-2 at 5.) Defendant argues that the case comes down to a difference of opinion between Plaintiff and Defendant regarding the appropriate course of treatment: "That is what Plaintiff is doing in this case—disagreeing with Dr. Kuo's use of silver nitrate to cauterize the wound after the biopsy, as opposed to using stitches." (ECF No. 78 at 3.) Because a difference of opinion as to diagnosis and treatment does not establish a constitutional violation, Defendant argues that he is entitled to summary judgment.

Defendant also argues that he is entitled to qualified immunity because, "[i]n the absence of a policy regarding the use of silver nitrate to cauterize an incision, it was not clearly established that this course of treatment would constitute deliberate indifference. Given that the use of silver nitrate is within the standard of care, Dr. Kuo would not have known that this particular use was constitutionally impermissible." (ECF No.81 at 3.)

In opposition to Plaintiff's arguments, Defendant argues that Plaintiff has failed to submit any admissible evidence to defeat Defendant's motion for summary judgment, let alone evidence to prevail on Plaintiff's motion for summary judgment. As to Plaintiff's contention that Defendant did not use a silver nitrate stick to close the wound, Defendant contends that Plaintiff's self-serving statements are not in an admissible form and are insufficient to create a triable issue of fact. "A rational trier of fact could not find that Plaintiff's denial of Dr. Kuo's description of the dental procedure is credible." (ECF No. 89 at 4.) Defendant also contends that Dr. Kuo's largely illegible handwritten medical notes are immaterial and do not provide a basis for denying summary judgment to Defendant.

#### 4. *Summary of Defendant's Evidence (ECF Nos. 70-3, 70-4, 70-5, 81-1)*

In support of his arguments, Defendant relies on his own declaration; the declarations of Dr. Matthew Miles, Regional Director of the Inmate Dental Services Program, Division of Healthcare Services for the CDCR; Plaintiff's CDCR dental records; and Plaintiff's deposition testimony. The following provides a summary of the material aspects of that evidence.

##### a. Defendant's Declaration

In his declaration dated September 18, 2018, Defendant declares that "[t]he surgical wound was chemically cauterized with a silver nitrate stick"; "[d]ue to the size of the lesion it was appropriate to cauterize the incision using the silver nitrate stick to prevent infection"; and "use of a silver nitrate stick to close this wound was necessary due to the size of the wound, the thin and fragile nature of the tissue at this location in the oral cavity, and the risk that sutures would pull through the tissue, creating more damage than if no sutures were placed." (ECF No. 70-3.)

##### b. Miles Declarations

Defendant submitted two declarations from Dr. Matthew Miles.

##### i. *May 11, 2018, Declaration*

In a declaration dated May 11, 2018, Dr. Miles declares:

> Based on review of the applicable dental and medical records, as well as Dr. Kuo's response to "request for admission—set one," I assess the care received by inmate Thomas to be within the community standard. On 4/8/15, Dr. Kuo surgically removed a lesion from the labial vestibule of the anterior mandible . . . . The surgical wound was chemically cauterized with a "nitrate stick". . . .
>
> The use of a nitrate stick to cauterize the surgical wound is within the standard of care. Alternatives to the use of a nitrate stick include: 1) Leaving the surgical site open and allow healing by secondary intention, and 2) Primary closure of the surgical site with sutures. The appropriate method of treatment for the surgical wound is determined by the clinician at the time of the procedure and must include consideration for the size of the wound, nature of the tissue surrounding the wound, and the location of the wound. Given the nature of the procedure and the general nature of the tissue at this location in the oral cavity, placing sutures may be problematic. Specifically, tissue in this area tends to be thin, friable, and subject to tension from the underlying musculature. As a result, it may be reasonably suspected that sutures would pull through the tissue, thus creating more tissue damage than if no sutures were placed.

(ECF No. 70-4 at 5.)

*ii.        November 29, 2018, Declaration*

In a declaration dated November 29, 2018, Dr. Miles declares: "The California Department of Corrections and Rehabilitation has no policy detailing indications for the use of silver nitrate to treat surgical wounds. . . . Thus use of a nitrate stick to cauterize the surgical wound is within the standard of care." (ECF No. 81-1 at 1.)

c.        Plaintiff's CDCR Dental Records

Plaintiff's dental records are summarized above with Plaintiff's evidence.

d.        Plaintiff's Deposition Testimony

During Plaintiff's deposition, Defendant's counsel read to Plaintiff a portion of Plaintiff's First Amended Complaint ("FAC").[2] The portion of the FAC read to Plaintiff includes the following:

> Defendant John Doe not stitching closed the surgical wound of a cyst removal led to tremendous pain and suffering from bacterial infection setting into the surgical wound that Defendant John Doe didn't suture closed. The open surgical wound led to several continual unsuccessful painful attempts to correct the damage done by John Doe, improper failure to stitch the Plaintiff's oral surgical wound closed. . . .

(ECF No. 70-5 at 5.)

After reading the portions of the FAC to Plaintiff, the following exchange occurred:

Q.        So, Mr. Thomas, is that an accurate depiction of the allegations that you have against the dentist right now?

A.        Yes, that's what I feel is – actually happened. I feel like, yes, he caused that to happen.

Q.        So that the dentist not putting the stitches in the surgical wound led to the bacterial infection of your teeth?

A.        That's what I feel happened.

(ECF No. 70-5 at 6.)

///

///

---

[2] The FAC is not the operative complaint. Rather, the operative complaint is the Second Amended Complaint ("SAC") filed on March 6, 2017 (ECF No. 22). However, the portion of the FAC read to Plaintiff during the deposition is in relevant part consistent with the SAC.

### D.    Legal Standards

#### 1.    Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To prevail on a claim under § 1983, a plaintiff must demonstrate that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

14

### 2. Deliberate Indifference to Serious Medical Needs

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble, 429 U.S. 97, 104 (1976)*. Assuming the medical need is "serious," a plaintiff must show that the defendant acted with deliberate indifference to that need. *Id.* "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It entails something more than medical malpractice or even gross negligence. *Id.* Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Critically, "a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

### 3. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). In determining whether defendants are entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Id.* at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable

official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (citation omitted) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### E.    <u>Evidentiary Objections</u>

Both parties have raised evidentiary objections, which the Court has carefully reviewed. To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment. This is particularly true when "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Capital Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

However, the Court will address several evidentiary issues. The Court will not consider as evidence the declaration of Hiram Summers because that declaration is based on hearsay. The Court also will not consider those portions of Plaintiff's declarations that rely on hearsay. Hearsay is any out-of-court statement, whether oral or written, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(a), (c). In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d), or it falls within a hearsay exception under Federal Rule of Evidence 803, 804, or 807. *See* Fed. R. Evid. 802; 30B Michael H. Graham, Federal Practice & Procedure: Evidence § 7031 at 279.

Here, Mr. Summers' declaration is based on statements made by Ms. Nolan, and portions of Plaintiff's declarations are based on statements made by Ms. Nolan and Ms. Banks. The statements of Ms. Nolan and Ms. Banks are being submitted as evidence of the truth of the matter asserted, and these statements do not qualify as non-hearsay, nor do they fall within an exception to the hearsay rule. Accordingly, Mr. Summers' declaration, and the portions of Plaintiff's declarations that rely on hearsay, are inadmissible hearsay and the Court declines to

consider this hearsay on summary judgment.[3] The Court will, however, consider those portions of Plaintiff's declarations and his sworn filings that are not hearsay and rely on Plaintiff's personal knowledge.[4]

### F.   Analysis

#### 1.   Plaintiff's Motion for Summary Judgment

Plaintiff argues that he is entitled to summary judgment on his claim of deliberate indifference because (1) his administrative appeal was granted in part, and (2) Defendant admits that he did not stitch/suture close the surgical wound.

Plaintiff argues that the material facts were admitted to and responsibility was accepted for Defendant's conduct when Plaintiff's administrative appeal was granted in part. However, the administrative appeal decisions submitted by Plaintiff do not include any finding regarding Defendant's conduct in performing the surgery, nor do those decisions take responsibility for Defendant's conduct. Rather, the administrative appeal decisions at the first and second levels merely grant in part Plaintiff's request for specialty dental treatment to address the dental issues that arose following the cyst removal surgery. (ECF No. 71 at 34-37.) Further, the director's level decision specifically states that the treatment Plaintiff "received to date was appropriate for the dental problems diagnosed," advises Plaintiff that "post surgical complications during the healing phase can occur with any treatment performed," and determined that the "follow up care that was provided was timely, appropriate and within the standard of care." (*Id.* at 38-39.) These findings do not entitle Plaintiff to summary judgment.

Defendant's admission that he did not use stitches or sutures to close the surgical wound also does not entitle Plaintiff to summary judgment. Defendant has put forward evidence that

---

[3] This ruling does not preclude Plaintiff from having Ms. Nolan, Ms. Banks, or other witnesses from testifying at trial regarding the use of silver nitrate sticks or other issues as long as such testimony is based on the witness's personal knowledge, is not hearsay or falls within an exception to the hearsay rule, is relevant, and is otherwise admissible.

[4] "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703." Fed. R. Evid. 602.

he used an alternative method—a silver nitrate stick—to close the wound (ECF No. 70-3), and that the use of a silver nitrate stick is within the standard of care (ECF Nos. 70-4 at 5, 81-1 at 1). Although Plaintiff disputes whether Defendant used a silver nitrate stick or anything else to close the wound, Defendant's evidence creates a genuine dispute of material fact regarding whether Defendant acted reasonably in closing the wound following the surgery and precludes the grant of summary judgment in favor of Plaintiff.

### 2. *Defendant's Motion for Summary Judgment*

#### a. Deliberate Indifference to Serious Medical Needs

Defendant argues that the undisputed evidence demonstrates that after Defendant removed the cyst from Plaintiff's gum, Defendant used a nitrate stick to cauterize the surgical wound in lieu of stitches, and that the use of the nitrate stick was not deliberately indifferent to Plaintiff's medical needs but was, instead, an exercise of professional judgment and within the standard of care. Defendant argues that the case comes down to a difference of opinion between Plaintiff and Defendant regarding the appropriate course of treatment, and that this difference of opinion does not establish a constitutional violation. Defendant argues that he is therefore entitled to summary judgment. The Court disagrees.

Plaintiff is not arguing that the use of a silver nitrate stick rather than stitches/sutures amounts to deliberate indifference. Instead, Plaintiff is arguing that Defendant did not use anything—did not use stitches/sutures and did not use a silver nitrate stick or anything else—to close the surgical wound and that this failure to close the wound was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Defendant's argument that this case is simply about a difference of opinion as to treatment fails.

Further, Plaintiff is not foreclosed by his deposition testimony from claiming that the case is about Defendant's failure to use any means to close the surgical wound. During his deposition, Defendant's counsel read out loud to Plaintiff a portion of Plaintiff's First Amended Complaint, which is in relevant part also included in the operative Second Amended Complaint. This portion of the complaints alleges that Defendant did not stitch close the wound and that Plaintiff suffered injury as a result. (ECF No. 70-5 at 5; *see* ECF No. 12 at 8 (FAC

18

allegations); ECF 22 at 8-9 (SAC allegations).) Defendant's counsel then asked Plaintiff:

> Q.      So, Mr. Thomas, is that an accurate depiction of the allegations that you have against the dentist right now?
> A.      Yes, that's what I feel is – actually happened. I feel like, yes, he caused that to happen.
> Q.      So that the dentist not putting the stitches in the surgical wound led to the bacterial infection of your teeth?
> A.      That's what I feel happened.

(ECF No. 70-5 at 6.)

The Court does not find Plaintiff's deposition testimony to be inconsistent with or contradict Plaintiff's claim that Defendant did not close the wound with stitches/sutures or any other means. The Second Amended Complaint alleges that Defendant did not close the wound with stitches, which is consistent with Plaintiff's deposition testimony. Defendant admits he did not close the wound with stitches, but claims that he closed the wound another way—with a silver nitrate stick—which Plaintiff denies. Plaintiff is not required to allege in his complaint everything not done by Defendant in order to dispute the defense that Defendant used some alternative to stitches.

Defendant also argues that the facts are undisputed that he used a silver nitrate stick to close the wound, and that Plaintiff's "self-serving statements" in his declarations "are insufficient to create a triable issue of fact. A rational trier of fact could not find that Plaintiff's denial of Dr. Kuo's description of the dental procedure is credible." (ECF No. 89 at 4.) The Court disagrees.

First, that a declaration is self-serving is an insufficient basis for disregarding the declaration at the summary judgment stage. As the Ninth Circuit explained,

> We have previously acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that the district court erred in disregarding declarations as "uncorroborated and self-serving"). Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. *See id*. However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence. *See id.; see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (holding that the district court properly disregarded the declaration that

19

included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

*Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015).

Here, Plaintiff's declarations and other sworn pleadings include statements of fact based on his personal knowledge.[5] These factual statements are properly considered on summary judgment even if they are self-serving in nature. *See id.*

Defendant also contends that Dr. Kuo's largely illegible handwritten progress notes are immaterial and do not provide a basis for denying summary judgment. (*Id.*) Again, the Court disagrees. Although the lack of notation in the progress notes regarding the use of a nitrate stick would be insufficient by itself to defeat summary judgment, this lack of notation lends further support to Plaintiff's position that Defendant did not use a silver nitrate stick or any other means to close the wound.

Additional support for Plaintiff's position that the wound was left open, and that Defendant did not use a nitrate stick or any other means to close the wound, is found in Plaintiff's declarations and sworn filings that Plaintiff was fully awake during the entire surgery and that Defendant did not suture/stitch or use a silver nitrate stick to close the wound; that Defendant instead only placed gall pads in the wound in order to catch the blood; that after the surgery, the wound was left open and Plaintiff was bleeding profusely from the open wound; and that when Plaintiff returned because he was bleeding profusely and was in significant pain, Defendant merely examined the open wound and then told Plaintiff, "I didn't use stitches to [close] the surgical wound opening, that's why the gall pads there, that is your own bloody spit building up coming out, you should swallow your own excess spit cause the gall can not catch it all!" (ECF No. 22 at 8-9.) Plaintiff's medical records also support Plaintiff's position that the wound was left open following surgery.

Based on the admissible evidence, the Court finds that there is a genuine dispute of

_____

[5] Plaintiff also includes some hearsay statements in his declarations. As noted previously, Plaintiff's hearsay statements are not being considered for purposes of summary judgment.

material fact regarding whether Defendant was deliberately indifferent to Plaintiff's serious medical needs. Viewed in the light most favorable to Plaintiff, and drawing all reasonable inferences in favor of Plaintiff, the evidence shows that Defendant failed to close the surgical wound by any means and that even when Plaintiff returned because of significant bleeding and a high level of pain, Defendant merely examined the open wound but did not provide any further treatment. During follow-up examinations by other dentists, the dentists noted that the wound was open and had not been stitched/sutured, that it was unclear why the wound had been left open rather than stitched closed, and that there was delayed healing and continuing pain. During one of these follow-up examinations, a doctor stitched closed the open wound.

### b. Qualified Immunity

Defendant argues that he is entitled to qualified immunity for his decision to use a silver nitrate stick to close the wound rather than stitches/sutures. However, as discussed above, the dispute here is not about whether Defendant used a silver nitrate stick as opposed to stitches/sutures to close the wound; rather, the dispute is whether Defendant used *anything* to close the wound, or instead left the wound open. Notably, Defendant does not argue that he is entitled to qualified immunity if, as Plaintiff contends, Defendant did not use any means to close the wound but instead left the wound open.

Viewing the evidence in the light most favorable to Plaintiff, Defendant was deliberately indifferent to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights. Further, it is clearly established that prison officials violate an inmate's Eighth Amendment rights if they are deliberately indifferent to an inmate's serious medical needs. *McGuckin,* 974 F.2d at 1059-60. Based on the evidence presented by Plaintiff, Defendant failed to close the surgical wound by any means, and even when Plaintiff returned due to significant bleeding and pain, Defendant merely examined the open wound, told Plaintiff he needed to just swallow the spit and blood, and sent Plaintiff back to his cell block without any further treatment. Every reasonable official would know that these actions violate an inmate's Eighth Amendment rights. Accordingly, Defendant is not entitled to summary judgment on the issue of qualified immunity.

## IX. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court finds that there is a genuine dispute of material fact as to whether Defendant was deliberately indifferent to Plaintiff's serious medical needs, and that Defendant is not entitled to summary judgment on the issue of qualified immunity.

Accordingly, IT IS RECOMMENDED that Plaintiff's motion for summary judgment (ECF No. 68), and supplemental motion for summary judgment (ECF No. 71), and Defendant's motion for summary judgment (ECF No. 70) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**June 5, 2019**__ 　　　　　　　 ___/s/ Erica P. Groin___
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

22